The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



FEBRUARY 10, 2017

Re:  Bethea, et al., v. City of N.Y., et al., No. 16 Civ. 2522 (EDNY)

Dear Judge Gold:

I represent Plaintiffs in the above-captioned Section 1983 action. I write to make a motion with the Court for an Order compelling certain discovery. The Parties have conferred pursuant to Local Rule 37.3 and the Court's Individual Rules. The Parties are available for conference at the Court's convenience.

## I. General Factual Allegations Re: This Section 1983 Action

On September 19, 2014, Demitress Bethea was driving in Kings County with Shavone Bethea as his passenger. Demitress noticed that he was being "tailgated" and so, when he passed an Access-A-Ride loading passengers on the right side of the road, Demitress pulled over in front of the Access-A-Ride to let the tailgater pass. Instead, the driver of the tailgating vehicle also stopped. Roughly four plainclothes NYPD Officers then exited the vehicle, and detained, searched and arrested Plaintiffs.
Defendants were working a plainclothes narcotics and/or anti-gang detail at the time, and had no reasonable cause or suspicion to detain or search Plaintiffs. Plaintiffs allege that the stop was the result of profiling. When Defendants were unable to find any contraband on Plaintiffs or in their vehicle, Defendants falsely stated that (1) they stopped Plaintiffs for a broken taillight; (2) that Plaintiffs led Defendants on a five-block car chase before Defendants were able to apprehend Plaintiffs by cutting them off; and (3) that when Defendants approached Plaintiffs' vehicle, Demitress Bethea chose this moment to throw two twists of crack cocaine onto the street. Defendants proceeded to charge Plaintiffs with criminal offenses based upon Defendants' false statements.
On October 14, 2014, the DA's Office dismissed all charges against Shavone Bethea without presenting the case to a grand jury. On October 21, 2014, Defendant Vasaturo and Defendant Saitta testified against Demitress Bethea before the grand jury. The grand jury declined to issue a true bill.

## II. Grand Jury Minutes

Plaintiffs have requested, and Defendants and the DA's Office have objected to producing, the Demitress Bethea grand jury minutes.[1] Rule 6(e) of the Federal Rules of Criminal Procedure provides

---

[1] I served the DA's Office with a Rule 45 subpoena under the Federal Rules of Civil Procedure, and their Counsel Toni Lichstein provided me with their position regarding the request for grand jury minutes. I will serve Ms. Lichstein with a copy of this motion on the same date I file it on ECF. In addition, I will serve Ms. Lichstein with any related Court Order as soon as it is issued so that that Office can respond accordingly.

I make the discovery motion for the grand jury material in accordance with Local Rule 37.3(c). In the event that the Court would like additional information, Plaintiffs request a formal briefing schedule. In the event that the Court would prefer that Plaintiffs make their application for the grand jury materials to a state court prior to raising the matter here, Plaintiffs will follow that instruction, and Plaintiffs note that the DA's Office's Counsel, Ms. Lichstein, takes the position that the motion should be first made in state court. However, insofar as I am seeking to enforce a FRCP 45 subpoena issued by this Court in connection with this action, I believe that the motion is more properly before Your Honor in the first instance, particularly because the relevant legal test requires judicial consideration of

that the Court "may authorize disclosure" of the grand jury minutes "at a time, in a manner, and subject to any other conditions that it directs . . . preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(i). Courts follow a three-part analysis in weighing whether to authorize disclosure, asking: (1) whether the party seeking "grand jury transcripts [to] show that the material they seek is needed to avoid a possible injustice in another judicial proceeding;" (2) whether "the need for disclosure is greater than the need for continued secrecy;" and (3) whether the "request is structured to cover only material so needed." Frederick v. City of N.Y., No. 11 Civ. 469 (JPO), 2012 WL 4947806, at *7 (S.D.N.Y. Oct. 11, 2012) (citing Douglas Oil Co. of Ca. v. Petrol Stops Nw., 441 U.S. 221, 222 (1979)). The Douglas Oil test applies to federal courts weighing whether to unseal state grand jury minutes. See Myers v. Phillips, No. 04 Civ. 4365 (ERK) (RML), 2007 WL 2276388, at *3 (E.D.N.Y. Aug. 7, 2007).

Moving now to the first prong of the Douglas Oil test, the Plaintiffs argue that they can make the necessary substantial showing of government misconduct to support that they have a particularized need for the grand jury minutes to avoid a possible injustice in this case. See Alvarado v. City of N.Y., No. 04 Civ. 2558 (NGG) (VVP), 2006 WL 2252511, at *2 (E.D.N.Y. Aug. 5, 2006).

First, Defendants' own version of events lacks credibility. While it is possible that a plainclothes anti-gang unit would spend its time enforcing traffic violations, it is not clear why they would. Furthermore, Defendants describe Plaintiffs as waiting until the end of a five-block car chase before Demitress Bethea threw two twists of crack cocaine to the ground right in front of Defendants. Assuming, arguendo, that Defendants' account of events were believable, it effectively admits that Demitress Bethea had actual possession of contraband, yet Defendants charged Shavone Bethea with constructive possession anyway. In People v. Willoughby, 142 Misc.2d 1014 (N.Y.C. Crim. Ct. Mar. 1, 1989), the court dismissed facially-insufficient constructive possession charges against a vehicle's passengers when evidence showed that an identified individual had actual possession. See People v. Logan, 94 N.Y.S.2d 681 (1949) (explaining that the presumption's application is one of necessity and may only be invoked if, under the circumstances, there is an absence of evidence as to which of the vehicle's occupants actually possessed the contraband).

Next, Plaintiffs allege that Defendants not only fabricated evidence against them, but that Defendants showed malice by initially overcharging them based on the fabricated evidence. For example, Defendants initially sought to bring unsupported Class B and D Criminal Possession with Intent to Sell Felonies against Plaintiffs (punishable by 1 to 9 years or 1 to 1.2 years in prison, respectively), which were eventually downgraded, presumably by DA's Office intervention, to much less serious Class C Felony and Class A Misdemeanor Criminal Possession charges. On information and belief, the DA's Office shared Plaintiffs' view of Defendants' incredibility, as that Office moved to dismiss all charges against Shavone Bethea roughly three weeks after his arrest. Then, the grand jury itself apparently shared Plaintiffs' theory of Defendants' incredibility when it declined to issue a true bill against Demitress Bethea a week after that.

Lastly, Defendant Vasaturo's and Defendant Saitta's grand jury testimony is not something that can be easily reconstructed through their depositions in the context of this civil rights action. In Dale v. Bartels, 532 F. Supp. 973, 977 (S.D.N.Y. 1982), the court held in the context of a "Bivens-type" action

---

facts already somewhat familiar to Your Honor, while a state court, which only ever had occasion to arraign Plaintiffs, would have to spend time learning about the facts of this case for the exclusive purpose of ruling on this single discovery motion. In addition, it would be pursuant to a Protective Order entered and enforced by this Court that the grand jury materials would be produced and protected.

that "the grand jury testimony is the res itself, the subject matter of this part of the lawsuit." Here, too, Defendants' statements about the incident before the grand jury are highly relevant to Plaintiffs' investigation and development of their case.

      Arriving at the second prong of Douglas Oil's test, Plaintiff's demonstrated need for disclosure is greater than the need for continued secrecy because, among other things, the only witnesses who testified were police officers. As the Bartels court explained, grand jury secrecy is weaker as applied to officer testimony than the testimony of a private citizen: "A Government agent is not likely to be inhibited by subsequent disclosure in the sense that a businessman, victim or extortion or racketeering who testifies to the grand jury might be." Bartels, 532 F. Supp. at 976.

      Finally, as to Douglas Oil's third prong, Plaintiffs limit their request to needed material. They do not request any record of the grand jurors' deliberations or votes. Plaintiffs only request the Defendant Officers' testimony.

### III.    Training Materials

In this case, Plaintiffs have pleaded a Monell claim alleging, inter alia, that the City Defendant's failure to train Individual Officers proximately caused those Officers' violation of Plaintiffs' rights. For example, and as described, supra, Plaintiffs allege that Defendants, who were working a narcotics, anti-gang, or anti-narcotics gang detail for the Organized Crime Control Bureau ("OCCB") were not properly trained in terms of what facts justify strip searches, the appropriate application of statutory principles of constructive contraband possession, and more. NYPD Patrol Guide Procedure numbers and OCCB Manual Procedure numbers are relevant discovery with respect to the training the Officers obtained in these respects. Furthermore, the OCCB Manual may include protocols regulating whether and to what extent plainclothes narcotics and/or anti-gang detectives may perform investigations through vehicle stops for alleged traffic violations in light of the temptation to abuse the practice, which abuse is precisely what Plaintiffs allege here.

### IV.    Disciplinary Indices, Personnel Evaluations And Disciplinary Files

In conferring with Defendants about discovery matters and the calendaring of Defendant Vasaturo's deposition, Plaintiffs learned that Defendants have not yet requested Defendant Vasaturo's relevant disciplinary files, the imposition of discipline, and personnel evaluations (routine evaluations, promotion evaluations, documents relating to relevant aspects of job performance and/or truthfulness, etc.). There is no apparent dispute as to whether Defendants will produce the files, but Plaintiffs flag the issue because the files' delayed production threatens the timely taking of Defendants' depositions. At present, the Court has set March 17, 2017, as the close of fact discovery. (The Parties have scheduled the taking of Plaintiffs' depositions for March 2, 2017, and March 3, 2017.)

      Cause for disciplinary-file-related delay also comes as a result of Plaintiff's February 10, 2017, filing of a First Amended Complaint, with Defendants' consent, to identify Defendants Armando Saitta and Joseph Cruzado as Doe Defendants. Plaintiffs have asked that Defendants order these individuals' disciplinary files in anticipation of their formal appearance later this month so that the records' late production will not threaten to delay fact discovery much more than the Vasaturo problem.

V.  **Status Report**

Finally, and by way of status report only, Defendants have agreed to produce to Plaintiffs (1) the memo books of Defendant Officers; (2) the identities of any additional Does who worked with Defendants during the incident (Defendants have agreed to produce the relevant roll call, which may aid in this regard) and the Desk Officer; (3) Plaintiffs' pedigree sheets, (4) the field test report relating to Voucher No. 3000428590; (5) the chain of custody records for Voucher No. 3000428590; (6) the NYPD Lab Report corresponding to Voucher No. 3000428590; and (6) various records to the extent that Defendants' inquiry reveals that they exist (i.e., strip search log/records, UF 250).

With the production of these records and the Court's resolution of the items detailed in the earlier Sections of this motion, Plaintiffs expect paper discovery will likely be complete.

VI.  **Conclusion**

In light of the foregoing, Plaintiffs respectfully request that the Court grant the relief herein described.

Thank you,

*Ryan Lozar*

Ryan Lozar